Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| NIDAL KHALIL EL SMAILI<br>Apelante<br><br><br>v.<br><br><br>WILSON ACEVEDO SALAS<br>Apelado | KLAN202400780 | Apelación procedente del Tribunal de Primera Instancia Sala de San Sebastián<br><br>Caso Núm. SS2022CV00483<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Comparece ante nosotros mediante recurso de apelación el Sr. Nidal Khalil El Smaili, (parte apelante o señor Khalil El Smaili), solicitando que revoquemos una *Sentencia* dictada el 1 de julio de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Sebastián. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* una acción de cobro de dinero instada por el señor Khalil El Smaili en contra del Sr. Wilson Acevedo Salas, (parte apelada o señor Acevedo Salas).

Veamos.

## I. Resumen del tracto procesal

El 28 de julio de 2022, el señor Khalil El Smaili instó una *Demanda* de cobro de dinero en contra del señor Acevedo Salas. En síntesis, este alegó que el 10 de septiembre de 2021, le vendió al señor Acevedo Salas la operación del garaje de gasolina bajo el nombre de Prospecto Of Toledo Corp., con equipo e inventario. Además, adujo que el precio de venta fue $25,000.00, de los cuales la parte apelada solo había entregado $6,000.00. Entonces, ante la alegada falta de pago, declaró

vencida la deuda, y por entender que la misma era líquida y exigible, le solicitó al TPI que le ordenara al señor Acevedo Salas pagar la diferencia debida, $19,000.00, más los intereses devengados, costas, gastos y honorarios de abogados.

En respuesta, el 16 de noviembre de 2022, la parte apelada presentó su *Contestación a Demanda,* en la cual, luego de aceptar algunas de las alegaciones y negar otras de las contenidas en la *Demanda,* enumeró varias defensas afirmativas.

Así las cosas, el 13 de marzo de 2024, el foro primario celebró la vista en su fondo. De la *Minuta* donde se recogieron las incidencias de dicha vista se desprende que a esta comparecieron las partes representadas por sus respectivos abogados, teniendo oportunidad de presentar prueba documental y testifical. Entonces, luego de las partes concluir sus respectivos interrogatorios a los testigos presentados, y dado por sometido el caso, la representación legal del aquí apelado argumentó que el apelante carecía de *standing* para solicitar el pago de la presunta deuda que pertenecía a Prospecto Of Toledo Corp. A esto respondió el abogado del apelante que la evidencia presentada lo que demostraba era que había acontecido un contrato privado entre dos personas.

A raíz del planteamiento sobre falta de legitimación activa del apelante para representar los intereses de la corporación aludida, el TPI le solicitó al señor Khalil El Smaili un memorando de derecho donde expusiera: si la compraventa entre las partes era válida; si había una resolución corporativa que le autorizara a realizar esa venta y le otorgara "standing"; si la corporación era válida al momento de perfeccionarse el contrato.

En cumplimiento, la parte apelante presentó *Memorando de Derecho* el 2 de mayo de 2024. En este, esbozó **que la resolución corporativa no era un requisito esencial para la validez de la compraventa de los activos de la corporación, ni para instar la acción de cobro**. (Énfasis

provisto). Asimismo, aseveró que la parte demandada no tenía legitimación activa (*standing*) para solicitar remedios, puesto que no sufrió daños como consecuencia de la falta de una resolución corporativa.

Por su parte, el 11 de junio de 2024, el señor Acevedo Salas presentó su *Memorando de Derecho.* Sostuvo que en la *Demanda* presentada se reclamó el pago de unas sumas adeudadas a la corporación Prospect of Toledo Corp., por la venta del equipo e inventario pertenecientes a ésta. Matizó que Nidal Khalili El Smaili y la corporación Prospect of Toledo Corp. son dos personas jurídicas diferentes, y el demandante había alegado bajo juramento que las cantidades adeudadas le pertenecían a dicha corporación. En consonancia, arguyó que el señor Khalil El Smaili tenía el peso de la prueba para demostrar que poseía autoridad para representar a dicha corporación en la venta de sus activos. A pesar de esto, sostuvo que la parte apelante no había presentado prueba alguna sobre ello, y quien tenía que instar la causa de acción para reclamar la presunta deuda era la corporación, a través de una persona que debidamente la representara, pero no se hizo.

Es así como, el 1 de julio de 2024, el TPI emitió la *Sentencia* cuya revocación nos solicita la parte apelante, declarando *No Ha Lugar* la demanda de cobro de dinero. Determinó el foro apelado que el señor Khalil El Smaili carecía de legitimación activa para presentar la demanda de epígrafe, por las siguientes razones:

> [...] el demandante reconoció que la venta de negocio en marcha efectuada con la parte demandada **se refería al negocio propiedad de la corporación Prospecto of Toledo, Inc**. aunque registrada en el Departamento de Estado de Puerto Rico como Prospecto of Toledo, Corp.
>
> **Esta corporación no es parte de la demanda del epígrafe ni se presentó, en evidencia, resolución corporativa que autorizara al demandante a comparecer, en la venta, ni en la demanda, a nombre de la misma**.
>
> Dispone la Regla 15 de Procedimiento Civil de 2009, en lo aquí pertinente, que "[t]odo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama...". Es harto conocido que en nuestro ordenamiento jurídico las Corporaciones, debidamente incorporadas tienen personalidad jurídica propia para demandar y ser demandadas.

> Igualmente conocido es el hecho que a admisión de parte, relevo de prueba.
>
> Conforme arriba expresado, **el demandante del epígrafe, Sr. Nidal Khalil El Samaili admitió, bajo juramento, que la venta efectuada por las partes era el negocio en marcha propiedad de la corporación. Por lo tanto, el demandante carece de legitimación activa para presentar la demanda del epígrafe**
> [...] [1]

(Énfasis provisto).

Ante ello, el 18 de julio de 2024, la parte apelante presentó una *Moción de Reconsideración*, reproduciendo los mismos fundamentos expuestos en su *Memorando de derecho*.

Al día siguiente el tribunal *a quo* declaró *No Ha Lugar* la petición de reconsideración. Razonó dicho foro que la estipulación alcanzada por las partes, en cuanto a que la parte apelada pagaría a la apelante la cantidad de $25,000.00 por la corporación, el inventario y la operación del garaje, era evidencia *prima facie* de que esta última carecía de legitimación activa. Añadió que "[s]olo la corporación, de ser válido el contrato, tendría legitimación activa para haber reclamado el incumplimiento. Durante todo el procedimiento del caso del epígrafe, incluyendo el juicio en su fondo, el demandante compareció en carácter personal".

Inconforme, el señor Khalil El Smaili presentó el recurso de apelación que nos ocupa, en el cual señaló los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA BAJO LA DOCTRINA DE FALTA LEGITIMACIÓN ACTIVA.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA AÚN CUANDO LA PARTE DEMANDADA ACEPTÓ EN SU TESTIMONIO QUE SE COMPROMETIÓ CON EL PAGO DE LA CANTIDAD ADEUDA [sic] CON EL DEMANDANTE.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ESTABLECER COMO REQUISITO PARA EL COBRO DE LA DEUDA QUE SE PRESENTARA UNA RESOLUCIÓN CORPORATIVA AUTORIZANDO AL DEMANDANTE A REALIZAR LA COMPRAVENTA, CUANDO LA PARTE DEMANDADA ADMITIÓ NO HABERLE REQUERIDO

---

[1] Anejo XI del recurso de *apelación*, págs. 68-69.

DOCUEMENTO [sic] ALGUNO A LA PARTE DEAMANDANTE [sic] DURANTE EL PROCESO DE NEGOCIACIÓN.

Junto al recurso de *apelación,* la parte apelante presentó una *Moción anunciando reproducción de la prueba oral.* Adujo como causa para ello, que de los señalamientos de errores se desprendían temas que mostraban apreciación errónea de la prueba testifical desfilada.

Mediante *Resolución* de 20 de agosto de 2024, declaramos *Ha Lugar* la solicitud para reproducir la prueba oral, además de disponer los términos para que la parte apelada instara escrito en oposición, y la apelante un alegato suplementario.

Luego de que este foro intermedio resolviera varios asuntos procesales, atinentes a la presentación de la transcripción de la prueba oral, la parte apelada presentó ante nosotros una *Moción Solicitando Desestimación.* Adujo como fundamento para su petitorio que la causa de acción de cobro de dinero que dio lugar a la presentación de la *Demanda* pertenecía a una corporación, Prospecto of Toledo Corp, quien era la que ostentaba la legitimación activa para instar dicho reclamo. Sin embargo, tal corporación no había sido incluida como parte demandante, y el apelante compareció como demandante, en su carácter personal, sin autorización para representar a la corporación. También, arguyó que, conforme a la Regla 15.1 de Procedimiento Civil, *infra,* la parte apelante no podía presentar la ratificación del negocio jurídico por la corporación, debido a su inexistencia legalmente. En consecuencia, sostuvo que este Tribunal de Apelaciones carecía de jurisdicción para atender el recurso presentado, por la falta de legitimación activa del apelante para representar a la corporación cuya deuda se reclamaba.

Finalmente, la parte apelante presentó un *Alegato.* Tal moción resultó reiterativa de la teoría legal ya esbozada en el recurso de apelación, sin precisar las partes de la Transcripción de la prueba testifical que sirvieran para sostener lo que alegaba. En este sentido, el apelante se limitó a repetir que: 1) aunque la Ley Núm. 164 de 2009, *infra,* requiere la

existencia de una resolución de la junta de directores para la venta de los activos de la corporación, no exige que la resolución corporativa sea parte del contrato de compraventa, por lo cual la parte apelada no quedó eximida de su obligación de pago; 2) que la parte apelada carecía de legitimación activa para levantar la referida defensa, ni requirió durante el proceso de negociación una resolución corporativa para poder negociar.

## II. Exposición de Derecho

### A. La legitimación activa

*Los pleitos se deben tramitar por la persona que por ley tenga el derecho que se reclama, es decir, la parte legítima.* Hernández Colón, *Derecho Procesal Civil,* 6ta ed., LexisNexis, San Juan, 2017, pág. 118. Quiere decir que como parte demandante *debe figurar aquélla a favor de quién el derecho material o sustantivo establezca el derecho objeto de la demanda. Íd.* En específico, la Regla 15.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 15.1, establece lo que sigue sobre la legitimación activa:

> Todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama, pero una persona autorizada por ley podrá demandar sin el concurso de aquella para cuyo beneficio se hace la reclamación; y cuando por ley así se disponga, podrá presentarse una reclamación a nombre del Estado Libre Asociado de Puerto Rico para beneficio de otra persona. No se desestimará un pleito por razón de no haberse tramitado a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la presentación del pleito, o se una al mismo, o se sustituya en lugar de la parte promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiese incoado por la persona con derecho.

En consonancia, la doctrina de la legitimación activa o *standing* limita quiénes pueden acudir a los tribunales a vindicar sus derechos. Se trata de una de las vertientes del principio de justiciabilidad mediante la cual se determina quién puede ser parte en una controversia ante nuestros tribunales. *Lozada Tirado et al., v. Testigos de Jehová,* 177 DPR 893 (2010); *Hernández Torres v. Gobernador,* 129 DPR 824, 835 (1992). Además, dicha doctrina ha sido definida como la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una

sentencia vinculante. *Ramos Rivera v. García*, 203 DPR 379, 394 (2019); *Bathia Gautier v. Gobernador*, 199 DPR 59 (2017).

A su vez, el principio de justiciabilidad surge atendiendo consideraciones de índole constitucional y de autolimitación adjudicativa, que exige tener ante sí un caso y controversias real antes de ejercer el poder judicial. *Ortiz v. Panel F.E.I.*, 155 DPR 219, 251 (2001); *ELA v. Aguayo*, 80 DPR 552, 559 (1958). De este modo, nuestro ordenamiento exige que las partes tengan legitimación activa para iniciar un pleito. *Ramos Rivera v. García García*, supra, p. 394. Una parte cuenta con legitimación activa para instar una acción, cuando concurren los siguientes requisitos: (1) haber sufrido un daño claro y palpable; (2) que el referido daño sea real, inmediato y preciso, y no abstracto o hipotético; (3) una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) que la causa de acción surja bajo el palio de la Constitución o de una ley. *Ramos Rivera v. García García,* supra, págs. 394-395; *Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 943 (2011).

En definitiva, no será justiciable aquella controversia en la que, entre otras razones, una de las partes no tenga legitimación activa. *Ramos Rivera v. García García*, supra; *Torres Montalvo v. Gobernador*, 194 DPR 760 (2016).

Por otra parte, como quedó visto, la Regla 15.1 de Procedimiento Civil, *supra,* también dispone que si el demandante no es la persona que por ley tiene la capacidad para exigir el derecho que se reclama, ello no conlleva automáticamente la desestimación del pleito. Sobre lo cual, la misma regla exige que, luego de levantarse la objeción, el tribunal le conceda un término razonable a la persona con derecho para que comparezca al pleito, es decir, que se acumule al pleito o se sustituya en lugar del demandante que originalmente radicó.

### B. La personalidad jurídica de las corporaciones

El Art. 217(b) del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5862, dispone que la corporación es una persona jurídica. Se entiende que la corporación es la entidad que surge cuando una o más personas

obtienen autorización del Estado para operar una empresa a la que se le reconoce una personalidad jurídica distinta y separada de la de sus dueños. Sus características principales son: (1) **personalidad jurídica propia**; (2) responsabilidad limitada; (3) gerencia centralizada; (4) existencia perpetua, y la (5) libre transferibilidad de intereses. (Énfasis provisto). C.E. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, Hato Rey, Ed. Publicaciones Puertorriqueñas, 2016, pág. 45.

Según resulta patente, una de las características principales de la corporación es que cuenta con una personalidad jurídica distinta y separada de la de sus dueños. *Miramar Marine v. Citi Walk,* 198 DPR 684, 691 (2017); *Santiago et al v. Rodríguez et al,* 181 DPR 204 (2011). En consecuencia, la corporación tiene su propio patrimonio, distinto al patrimonio de sus accionistas, sean estos últimos personas naturales o jurídicas. *D.A.C.o v. Alturas Fl. Dev. Corp. y otro,* 132 DPR 905, 924 (1993); *Sucn. Santaella v. Srio. de Hacienda,* 96 DPR 442, 451 (1968).

La figura de la corporación facilita el desarrollo de empresas **porque se le reconoce una personalidad jurídica distinta a la de sus dueños o miembros**, quienes por lo general no responderán con sus bienes personales por los actos de la corporación, sino hasta el monto de su inversión. (Énfasis provisto). *Santiago et al. v. Rodriguez et al.,* 181 DPR 204, 214 (2011). Para poder operar como corporación, la empresa deberá satisfacer las exigencias que dispone la Ley Núm. 164-2009, según enmendada, conocida como la Ley General de Corporaciones de 2009 (Ley de Corporaciones), 14 LPRA sec. 3501 *et seq.* Es decir, la posibilidad de llevar a cabo una actividad o transacción mediante la forma corporativa —con la protección de responsabilidad limitada— es un privilegio que el Estado otorga a todo aquel que satisfaga los requisitos de la Ley de Corporaciones. Díaz Olivo, a la pág. 108. Así, por ejemplo, el Art. 1.05 de la Ley de Corporaciones, 14 LPRA sec. 3505(a), establece lo siguiente:

> (a) Otorgado y radicado el certificado de incorporación, según lo dispuesto en la sec. 3503(d) de este título y pagados los derechos

requeridos por ley, la persona o las personas que de tal modo se asociaren, sus sucesores y sus cesionarios, constituirán, a partir de la fecha de dicha radicación, o de haberse establecido en el certificado de incorporación, desde una fecha posterior que no exceda de noventa (90) días, una entidad corporativa con el nombre que aparezca en el certificado, sujeta a disolución según se dispone en este subtítulo.
[...]

De la disposición citada se desprende que, a partir de la expedición del certificado de incorporación nace la entidad corporativa. Por tanto, **constituida la personalidad jurídica de la corporación, su existencia como ente jurídico es independiente de sus accionistas, directores y oficiales**. (Énfasis provisto). *Peguero y otros v. Hernández Pellot*, 139 DPR 487, 502 (1995). De esto se desprende que existan distinciones legales entre la corporación y las personas naturales que forman parte de ella. *Íd.*

Las corporaciones pueden adquirir y poseer bienes de todas clases, así como contraer obligaciones y ejercitar acciones civiles y criminales, con las limitaciones que impongan las leyes y los documentos de su constitución. Art. 227 del Código Civil, 31 LPRA sec. 5881. Asimismo, una vez reconocida la personalidad jurídica de una corporación, esta puede demandar y ser demandada bajo su nombre corporativo en cualquier tribunal y participar en cualquier procedimiento judicial, administrativo, de arbitraje o de cualquier otro género. Art. 2.02 de la Ley de Corporaciones, 14 LPRA sec. 3522 (b). Ahora bien, esa personalidad jurídica es duradera hasta tanto la corporación se disuelva o se extinga. *Miramar Marine et al. v. Citi Walk et al.*, 198 DPR 684,691 (2017).

## C. La revisión apelativa de las determinaciones de hechos

Los tribunales apelativos aceptamos como correctas las determinaciones de hechos de los tribunales de instancia, al igual que su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en sala. Después de todo, la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su

testimonio y escuchar su voz. Por definición, un tribunal de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

Sobre lo mismo, *un tribunal revisor tiene vedado intervenir con la adjudicación de credibilidad de los testigos, ni puede sustituir las determinaciones de hechos que, a su amparo, haya efectuado el foro primario basado en sus propias apreciaciones. Pueblo v. Toro Martínez*, 200 DPR 834, 858 (2016). Por ello, **ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión**, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. (Énfasis provisto). *Ortiz Ortiz v. Medtronic P.R. Operations, Co.*, 209 DPR 759, 778 (2022).

### III. Aplicación a los hechos

a.

Como surge del recuento procesal, en la *Sentencia* apelada el TPI determinó como hechos, los siguientes: que la venta del negocio en marcha se refería **al negocio propiedad de la corporación Prospect Of Toledo, Inc.**, (Prospect Of Toledo Corp., según registrada en el Departamento de Estado); que, a pesar de ello, dicha corporación no se hizo formar parte en este pleito; que **tampoco se presentó en evidencia una resolución corporativa donde se autorizara al apelante a comparecer en la Demanda, en representación de Prospect Of Toledo Corp**. A partir de estas determinaciones fácticas el foro primario concluyó que el apelante carecía de legitimación activa para instar la causa de acción sobre el recobro de una alegada deuda que pertenecía a la corporación Prospect Of Toledo, Inc., y por ello declaró *No Ha Lugar* la *Demanda* presentada por el aquí apelante.

A tal curso decisorio opone la parte apelante a través de su recurso de apelación, que no era requisito esencial legal el presentar una resolución corporativa autorizándole a vender los activos de la referida corporación. Al contrario, el señor Khalili El Smali promueve el argumento de que las partes en este caso pactaron unas obligaciones, que constituyeron un contrato válido, a cuyo reclamo estaba autorizado ante el incumplimiento por la parte apelada. Además, le imputó falta de diligencia al apelado, al no haber requerido una resolución corporativa en el proceso de negociación.

En consonancia con dicha teoría legal, el apelante nunca ha presentado como prueba una resolución corporativa que lo autorizara para realizar el negocio jurídico, o comparecer a presentar la *Demanda* en representación de la corporación.

b.

Resulta necesario iniciar señalando que, aunque la parte apelante presentó ante nosotros una transcripción de la prueba oral desfilada en el juicio, en su *Alegato* no se detuvo a señalar en qué páginas de dicho documento se encontraba la prueba testifical que sirviera para impugnar las determinaciones de hechos efectuadas por el foro apelado. Dicho *Alegato* más bien es una reiteración de la teoría legal que el apelante ya había impulsado en el recurso de *apelación,* carente de elementos que nos pusieran en posición para llevar a cabo la limitada labor revisora que nos corresponde ante las determinaciones de hecho alcanzadas por el foro apelado a través de la prueba oral.

Según subrayamos en la exposición de derecho, *la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz. Por definición, un tribunal de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Por tanto, **ante la ausencia de error manifiesto, prejuicio, parcialidad o**

**pasión**, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. (Énfasis provisto). *Ortiz Ortiz v. Medtronic P.R. Operations, Co.*, supra.

En consecuencia, por cuanto la parte apelante falló en impugnar de modo alguno las determinaciones de hechos efectuadas por el TPI al valorar la prueba testifical, nuestro análisis de derecho se ceñirá a estas.

c.

Según expusimos al considerar el derecho aplicable, el principio de justiciabilidad exige a los tribunales, entre otros, determinar si las partes tienen legitimación activa para iniciar un pleito. *Ramos Rivera v. García García*, supra. A su vez, la Regla 15.1 de Procedimiento Civil, *supra*, expresamente requiere que todo pleito se tramite a nombre de la persona que por ley tenga el derecho que se reclama.

Atado a lo anterior, también resaltamos que, en el caso particular de las corporaciones, es harto conocido que estas tienen **su propia personalidad jurídica y patrimonio**, distinto al de sus accionistas, sean estos últimos personas naturales o jurídicas. (Énfasis provisto). *DACO v. Alturas Fl. Dev. Corp. y otro,* 132 DPR 905, 924 (1993). Por lo tanto, una vez queda constituida debidamente, la corporación puede ejercer los derechos y poderes conferidos por el Art. 2.02 de la Ley de Corporaciones, supra. *Eagle Sec. Police, Inc. v. Dorado*, 211 DPR 70, 87 (2023). Entonces, tan pronto ostenta personalidad jurídica y, por ende, legitimación activa, puede otorgar contratos y comparecer a una acción civil como demandante o demandado bajo su nombre corporativo o participar en cualquier procedimiento civil, administrativo, de arbitraje, etc. *Íd.*

Entonces, partiendo de las determinaciones de hechos alcanzadas por el TPI, relativas a que Prospect of Toledo Corp. era la dueña del negocio en marcha vendido, nos resulta evidente que quien debía comparecer al

foro judicial para vindicar sus derechos era dicha corporación, no el apelante en su carácter personal. Sin embargo, la parte apelante nunca ha logrado articular fundamentos válidos por los cuales dejó de incluir como parte demandante a Prospecto of Toledo Corp., titular del negocio objeto de la compraventa, ni mucho menos si contaba con alguna autorización para instar la *Demanda* en representación de dicha corporación.

Es de notar que, aun habiendo quedado sometido el caso, el TPI le permitió al apelante presentar prueba sobre su capacidad para representar los intereses de Prospecto of Toledo Corp., pero este no proveyó prueba documental alguna al respecto, ni tampoco solicitó que se le sustituyera por la corporación como parte demandante, sino que se limitó a reiterar que no era necesaria tal documentación para perfeccionar el negocio jurídico. Por tanto, nos resulta evidente que, a pesar del clarísimo estado de derecho referente a la distinción entre la personalidad jurídica y patrimonial de las corporaciones frente a la de sus accionistas, el apelante ha confundido la personalidad jurídica de la corporación con la suya. Es decir, el apelante no ha reconocido que la corporación tiene personalidad y patrimonio propios y, según lo determinó el TPI, fue quien presuntamente vendió el negocio en marcha a la parte apelada, por lo cual la causa de acción por alegado incumplimiento del pago de lo debido le corresponde a esta, y no al señor Khalil El Smaili en su carácter personal.

En definitiva, juzgamos que no se cometieron los errores que la parte apelante le imputó haber cometido al foro apelado.

## IV. Parte dispositiva

Por los fundamentos expuestos, los cuales hacemos formar parte de esta Sentencia, *confirmamos*.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones